UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DOROTHY HEBERT                                    CIVIL ACTION

V.                                                NO. 17-3529

WING SALE, INC.                                   SECTION "F"

ORDER AND REASONS

Before the Court is third-party defendant Shanico Enterprise Corporation's motion to dismiss Wing Sale, Inc.'s third-party complaint. For the following reasons, the motion is GRANTED.

**Background**

This lawsuit arises from personal injuries allegedly sustained when a cigarette lighter exploded.

Dorothy Herbert was using a disposable cigarette lighter on October 10, 2016 when it exploded, lighting Herbert's shirt on fire and causing third degree burns on the upper portion of her body. The lighter was distributed by Wing Sale, Inc. On April 17, 2017, Herbert sued Wing Sale, claiming that Wing Sale violated the Louisiana Product Liability Act and breached it warranty that the lighter would be safe for use. On October 11, 2017, Wing Sale sued Xuzhou Aliter Products Co., Shanico Enterprise Corporation, and NSL Group USA, Inc. Xuzhou Aliter designed and manufactured the lighter, and its principal place of business is in China. Shanico

and NSL are both California corporations, with their principal place of business in California. They facilitated the importation of lighters between Xuzhou Aliter and distributors in the United States. Typically, Shanico imports lighters from Xuzhou Aliter. Over the last ten years, all of the lighters that Shanico handled were manufactured by Xuzhou Aliter. Shanico then sells those lighters to NSL, usually around ten million lighters per year, who then resells them to distributors and retailers. In 2009 and 2010, Shanico facilitated the importation of two shipments of lighters, which were purchased by Wing Sale.[1] Wing Sale alleged in its third party demand that the lighters manufactured, imported, and distributed by Xuzhou Aliter, NSL, and Shanico were not properly tested and were unsafe, and that the three third-party defendants are responsible to Hebert for any alleged injury and damages.

Wing Sale voluntarily dismissed its claims against Xuzhou Aliter on April 4, 2018 because it was unable to serve it. On April 24, 2018, NSL answered the third party complaint. The same day, Shanico moved to dismiss Wing Sale's complaint for lack of personal jurisdiction. On June 14, 2018, the Court ordered that Wing Sale and Shanico complete jurisdictional discovery.

---

[1] NSL was also involved in supporting the purchase of lighters between Xuzhou Aliter and Wing Sale. It collected payments for the lighters bought by Wing Sale from Xuzhou Aliter, and passed along the payment to the Chinese manufacturer.

I.

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to present by motion a defense that the Court lacks personal jurisdiction over it.

A.

When nonresidents like the defendants move to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of this Court bears the burden of establishing it. See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction where, as here, the Court decides the matter without an evidentiary hearing. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). The Court will take all uncontroverted allegations in the complaint as true and resolve any conflicts in the plaintiff's favor. Id. The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. Id.; see Jobe v. ATR Mktg., Inc., 87 F.3d 751, 752 (5th Cir. 1996).

The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of due process. See Seiferth v. Helicópteros Atuneros, Inc., 472

3

F.3d 266, 270 (5th Cir. 2006). Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over the defendant would offend due process. See La. Rev. Stat. Ann. § 13:3201(B); Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The "canonical opinion" governing personal jurisdiction remains to be International Shoe Co. v. Washington, 326 U.S. 310 (1945). See Daimler AG v. Bauman, 134 S.Ct. 746, 754. In International Shoe, the Supreme Court held that "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear, 564 U.S. 915, 923 (2011)(quoting International Shoe, 326 U.S. at 316). Within the International Shoe framework, two categories of personal jurisdiction exist: specific jurisdiction and general jurisdiction. See id. Specific jurisdiction exists when a suit arises out of or relates to the defendant's contacts with the forum state. Daimler 134 S.Ct. at 754; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). On the other hand, a court has general jurisdiction over a foreign corporation "to hear any and all claims

against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." Daimler 134 S.Ct. at 754 (quoting Goodyear 564 U.S. at 919). Wing Sale acknowledges that the Court does not have general jurisdiction over Shanico. At issue is whether the Court has specific jurisdiction over Shanico.

The Fifth Circuit instructs, "Specific jurisdiction 'focuses on the relationship among the defendant, the forum, and the litigation.'" Monkton Ins. Services, Ltd. v. Ritter, 768 F.3d 429, 432-33 (5th Cir. 2014)(quoting Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014)). "'For a State to exercise jurisdiction with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.'" Id. (quoting Walden, 134 S.Ct. at 1121). This Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Id. If the plaintiff can successfully establish the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. Id.

B.

The parties dispute whether the Court has specific jurisdiction over Shanico, specifically whether Shanico has minimum contacts with Louisiana. Both parties look to the "stream of commerce" doctrine, which states that a defendant may purposefully avail itself in the forum state when it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980); see J. McIntyre Machinery v. Nicastro, 131 S. Ct. 2780, 2788 (2011)(Kennedy, J., plurality); Ainsworth v. Moffett Engineering, 716 F.3d 174, 178 (5th Cir. 2013)("In cases involving a product sold or manufactured by a foreign defendant, this Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction . . . ."). But "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi Metal Industry Co. v. Superior Court of Cal., Solana Cty., 480 U.S. 102, 111 (1987). The plaintiff must show that the defendant had "an intent or purpose to serve the market in the forum state," which can be demonstrated by advertising, providing customer service for customers in the state, or "marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." Id.

The Supreme Court most recently addressed the stream of commerce doctrine in J. McIntyre Machinery v. Nicastro, 131 S. Ct. 2780 (2011). J. McIntyre Machinery manufactured metal-shearing machines in England, where the company was incorporated, and sold them to a U.S.-based distributor who then sold them within the United States. Id. at 2796. The plaintiff was severely injured by a machine in New Jersey, one of the four that ended up in the state. Id. The New Jersey Supreme Court held that New Jersey had jurisdiction over the British manufacturer because the distributor sold and shipped one machine to a New Jersey customer, the manufacturer permitted and wanted the distributor to sell its machines to any customer in the United States, and the manufacturer attended a few trade shows in the United States. Id. at 2791. Overturning the New Jersey Supreme Court, the Supreme Court held that New Jersey did not have personal jurisdiction over the manufacturer. Id. at 2791. But the Court did not produce a majority opinion. Justice Kennedy authored a plurality opinion, joined by Chief Justice Roberts, Justice Scalia, and Justice Thomas. Justice Breyer authored a concurring opinion, joined by Justice Alito. The plurality took a more narrow view of the stream of commerce test, permitting the "exercise of jurisdiction only where the defendant can be said to have **targeted** the forum." Id. at 2788 (Kennedy, J., plurality)(emphasis added). Hesitating to "announce a rule of broad applicability without full consideration of the modern-day

7

consequences," Breyer determined the issue solely by "adhering to our precedents" and conducted a "defendant-focused fairness" analysis. Id. at 2791-93 (Breyer, J., concurring). When the Court does not produce a majority opinion, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." Marks v. United States, 420 U.S. 188, 193 (1977)(quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)). The Fifth Circuit has held that Justice Breyer's concurring opinion "furnished the narrowest grounds for the decision and controls here." Ainsworth v. Moffett Engineering, 716 F.3d 174, 178 (5th Cir. 2013).

The Court's inquiry in determining purposeful availment must "focu[s] upon the relationship between 'the defendant, the *forum*, and the litigation,'" and consider whether "it is fair, in light of the defendant's contact *with that forum*, to subject the defendant to suit there." McIntyre, 121 S. Ct. at 2793 (Breyer, J., concurrence). The "stream of commerce" doctrine does not displace this rule, which demands that the Court consider the fairness towards the defendant in the unique factual circumstances before it. Id. In McIntyre, the Court held that the plaintiff did not show that the manufacturer had sufficient contacts with New Jersey. Id. at 2791. An isolated sale to a New Jersey customer, even accompanied by a desire to sell to customers in the United States generally and some marketing efforts, is not enough. Id. at

2791-92 ("[A] single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place.") In determining that the plaintiff had not met its burden to demonstrate jurisdiction, the Court considered whether the defendant: (1) had a "regular . . . flow. . . [and] regular course" of sale in New Jersey; (2) did "something more, such as special state-related design, advertising, advice, marketing, or anything else;" (3) made any specific effort by the manufacturer to sell in the forum state; or (4) had an "expectation" that the goods would be purchased in the forum state.[2] Id. The plaintiff did not show any of these factors. Id. The Court held that finding jurisdiction, in the absence of facts to support minimum contacts, "would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter

---

[2] The Court noted that other facts could be relevant in establishing a basis for jurisdiction, such as the size and scope of the forum state's industry for the goods at issue. Id. (the Court states that facts "describing the size and scope of New Jersey's scrap-metal business" stated in Justice Ginsburg's dissent "could have demonstrated in support of jurisdiction," but they were not developed on the record.)

9

how few the number of items that end up in the particular forum at issue." Id. at 2793.

Two years after McIntyre was decided, the Fifth Circuit upheld a district court's determination that the forum state had jurisdiction on similar facts. Ainsworth, 716 F.3d at 179. In Ainsworth v. Moffett Engineering, the plaintiff sued individually and on behalf of her deceased husband, who had been killed by an allegedly defective forklift while he was working in Mississippi. Id. at 178. The forklift was designed and manufactured by an Irish corporation, but was distributed within the United States by an American distributor. Stating that the outcome of the case "turn[ed] on [its] interpretation of the Supreme Court's recent decision" in McIntyre,[3] the Fifth Circuit held that Mississippi had jurisdiction because the distributor sold the forklifts across the United States and the manufacturer never instructed the distributor to limit its territory. Id. at 178-79. It distinguished the case from McIntyre on the ground that this was not an isolated sale. Id. at 179. The manufacturer sold 13,073 forklifts to the distributor between 2000-2010, and 203 of those forklifts, approximately 1.55% of Moffett's United States sales, were sold to customers in Mississippi.[4] Id. Additionally, the Court stated that

---

[3] The Fifth Circuit noted that its holding "is in tension" with the plurality's holding in McIntyre. Id. at 178-79.
[4] The Fifth Circuit also noted that the total forklifts sold in the United States totaled $253 million. Id.

10

the manufacturer designed forklifts for poultry-related uses, and that Mississipi is the fourth largest poultry-producing state in the United States. Id. "Thus, even though [the manufacturer] did not have specific knowledge of sales by [the distributor] in Mississippi, it reasonably could have expected that such sales would be made . . . ." Id.

II.

In the general course of business, Shanico imports lighters from Xuzhou Aliter, a Chinese lighter manufacturer, and sells them to NSL, who then sells them to distributors. Shanico and NSL are both based in California; they share a building.[5] They typically receive the lighters in California and inspect them before they are sold to distributors. Shanico has no offices or employees in Louisiana, does not advertise in Louisiana, and does not maintain a website whereby a person or entity in Louisiana can make arrangements online for Shanico to facilitate the import of cigarette lighters. Additionally, in the last ten years, Shanico has not facilitated the import of any cigarette lighters for a Louisiana customer or client. However, in 2009 and 2010, Wing Sale, a New Jersey corporation, purchased two large orders of cigarette

---

[5] NSL and Shanico are separate entities with separate owners (and separate counsel in this proceeding), but they do both operate in the same building, albeit separate offices. Additionally, Wang works at both companies.

lighters from Xuzhou Aliter. Some of those lighters were then sold in Louisiana. It is unclear to the Court whether the parties agree if the lighter that injured Hebert originated from the Shanico shipment.

Shanico's role in the sale is disputed. Shanico attempts to distance itself from the importation of the lighters. BoQi Wang, Shanico's president and corporate representative, states in his deposition that Shanico was a mere consignee to the importation of lighters, and did not ever own them. Shanico contends that it merely helped Wing Sale import the lighters by completing some paperwork, but it never bought or sold the lighters. Wing Sale disagrees, and contends that Shanico imported the lighters, then sold them to it. A 2009 correspondence signed by Wang states that the shipment "has been sold in transit to Wing Sale, Inc." Wang states that he did not prepare that letter, and blindly signed it. Additionally, Shanico allowed Wing Sale to rely on Shanico's U.S. Consumer Products Safety Commission certification to import the lighters. All lighters imported into the United States must meet CPSC regulations, and the importer is required to complete inspections on the imported lighters. Shanico contends that it simply allowed Wing Sale to use its CPSC certification for the lighters. However, it maintains, and Wing Sale does not contest, that Shanico did not place the order with the manufacturer, retain the forwarding company, clear United States customs, or receive

the shipment. It also did not inspect the lighters, because the shipment was received by Wing Sale in Newark, New Jersey.[6]

The Court must resolve any conflicts in the plaintiff's favor. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). Accordingly, the Court will accept Wing Sale's evidence that Shanico imported the lighters, but will still consider the undisputed facts that Shanico's role as importer was limited. After Shanico imported the lighters, it promptly sold the lighters to Wing Sale, who distributed them nationally. The 2009 shipment contained 649,000 lighters, and the 2010 shipment contained 1,100,000 lighters, totally 1,749,000 lighters. Of the nearly 1.75 million lighters imported by Shanico and purchased by Wing Sale, about 14,000 lighters were sold to customers in Louisiana, or 0.8%. Wang testified that he never placed any restriction on where Wing Sale could sell the lighters, or even inquired as to where he would sell the lighters. He stated in his deposition that he "ha[d] no idea" whether the lighters Shanico helped to import would eventually be sold in Louisiana.

This Court does not have personal jurisdiction over Shanico because Shanico did not purposefully avail itself in the state of Louisiana. It did not regularly import products that were sold to distributors in Louisiana; it has not sold to a distributor in the

---

[6] When Wing Sale imports lighters to sell to NSL, it receives them in California and inspects them at its facility there.

state in the last ten years. It has not done "something more" to develop a relationship with Louisiana—no advertising, marketing, contact, or even a website—nor has it done anything "special." The plaintiff has not submitted evidence that Shanico even marketed its services to distributors, who in turn would sell in the state. And although it has sold a large volume of lighters to Shanico, it did so in only two shipments, eight years ago. There is no indication that the lighters were specifically designed to appeal to Louisiana customers, or that Louisiana customers have a special affinity for lighters above other states. In fact, less than 1% of its sales to Wing Sale ended up in Louisiana. Although Shanico never instructed Wing Sale to avoid selling its lighters in Louisiana, it never encouraged it either. Shanico did not profit from Wing Sale's sale of the lighters it procured; it had no interest in the lighters after Wing Sale took them, including where they were sold. When only a small fraction of the lighters were sold in Louisiana, and Wing Sale cannot show any sales effort on behalf of Shanico to sell the lighters in the state, it cannot be said that Shanico purposefully directed the lighters towards Louisiana. Because Wing Sale has not met its burden to show that Shanico has minimum contacts with the state, the Court does not have specific jurisdiction over it.

Accordingly, IT IS ORDERED: that Shanico's motion to dismiss for lack of jurisdiction is GRANTED.

14

New Orleans, Louisiana, August 30, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE